IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Ubaldo Figueroa Rodríguez**<br>*Plaintiff*<br>*v.*<br>**Puerto Rico Department of Education,**<br>**Commonwealth of Puerto Rico**<br>*Defendants* | CIVIL ACTION<br>Case No. 3:24-cv-1122<br>DISABILITY(ADA)<br>TITLE VII<br>(Gender/Religion)<br>RETALIATION<br>**Demand for Jury Trial** |

**COMPLAINT**

**I.     INTRODUCTION**

**Preliminary Statement**

1. Plaintiff *Ubaldo Figueroa Rodriguez* ("*Ubaldo*"), a male high-school theater teacher, with diagnosed and/or perceived disabilities which include blindness, albinism, Hermansky Pudlak 1, and diabetes. He belongs to a protected group of individuals because of his disabilities. Plaintiff now brings this civil action pursuant to the Americans with Disabilities Act and Title VII, to remedy acts of employment discrimination perpetrated against him. Plaintiff contends unlawful acts of discrimination, because of his gender, disabilities and/or protected activity (retaliation), were perpetrated against him by his employer Puerto Rico Department of Education/Commonwealth of Puerto Rico (Hereinafter "Defendant") which led to his wrongful termination of employment on March 3, 2023, when he was given written notice of his termination with a *pretextual* excuse, in response to his protected activities. Plaintiff has worked for defendant at the "*Ramon Vilámayo High School*" since August 2017, and he belongs to a group of protected employees.

2. The Plaintiff respectfully asks the Court to find defendants in violation of Federal Antidiscrimination Laws, specifically the Americans with Disabilities Act and Title VII, including Puerto Rico laws, and to award the relief requested below. Defendant violated plaintiff's rights

1

under Federal and Puerto Rico laws, and plaintiff seeks what is only deemed to be fair and just, immediate work reinstatement to the same workplace school he was assigned and belongs, his employee record expunged, the hostile work environment to cease, as well as compensatory, punitive damages, and his attorney fees.

3. Defendants violated plaintiff's rights under federal law protecting workers from discrimination on the basis of his age, gender, religion and protected activity. Defendants are jointly and severely liable for violating plaintiff's rights under federal law. Plaintiff seeks reinstatement, back pay and benefits, including unpaid salary incentives, compensatory damages, and reasonable attorney fees.

## II.     JURISDICTION

4. This Honorable Court has original jurisdiction over Plaintiff's federal claims set forth in this complaint pursuant to 28 U.S.C. §1331 (federal question), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16, and pursuant the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §12101 et. seq., codified 42 U.S.C. §§12112-12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166). This Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 (a) because those arise from same nucleus of operative facts as his federal claims.

5. Venue properly lies before this Court under 28 U.S.C. §1391(b). Plaintiff and Defendants are residents of the Commonwealth of Puerto Rico and the acts and/or omissions giving rise to Plaintiff's claim have occurred in this district. A substantial part of the events giving rise to this suit arose on Defendants' premises, located in the Commonwealth of Puerto Rico. Accordingly, under 29 U.S.C. §1391 (b) (2), venue lies in this judicial district.

6. Prior to filing this lawsuit, plaintiff filed timely written charges with the Equal Employment Opportunity Commission ("EEOC"), where he notified defendants and indicated

discrimination based on his *gender, disability* and *protected activity*. The charge was filed on March 15, 2023, and placed defendants on notice of his claims under federal employment discrimination statutes. Accordingly, plaintiff has exhausted all administrative remedies pursuant to 42 U.S.C. §2000e-5 and this Complaint is properly filed.

### III.     PARTIES

9.      Plaintiff *Ubaldo Figueroa Rodriguez* ("plaintiff") is a citizen of San Juan Puerto Rico and at all relevant times employed by defendant the Commonwealth of Puerto Rico, specifically its Department of Education, since 1994, as Theater professor. He is a male belonging to the protected group of individuals because of his disabilities, resides in the judicial District of Puerto Rico and mailing address PO Box 16284, San Juan, PR 00908.

10.     Defendants are the Puerto Rico Department of Education and the Commonwealth of Puerto Rico.  At all relevant times was plaintiff's employer, and is responsible for plaintiff's gender and disability discrimination, hostile working environment, and retaliation because of his protected conduct. Puerto Rico Department of Education's mailing address is Ave. Tnte. Cesar Gonzalez, Esq. Calle Juan Calaf, Industrial Tres Monjitas, Hato Rey, PR 00917. Defendant Commonwealth of Puerto Rico a/k/a Estado Libre Asociado de Puerto Rico is made a party to this case to comply with service of process requirements for actions brought against Commonwealth.

11.     Defendant's responsible management officials are *Edgardo Rodriguez (Director)* and Jorge Santiago (Regional Director) who were at all relevant times, employees of the Puerto Rico Department of Education, within the judicial District of Puerto Rico. They is responsible for plaintiff's hostile working environment and wrongful termination of employment.

12.     Defendants are employees, agents, and/or supervisory personnel and were, at all times material to this complaint, acting in the course and scope of employment.  Defendants

participated in and/or directed the unlawful violations alleged herein or knew of violations and failed to prevent.  All individual Defendants are jointly liable for damages alleged herein.

## IV.    FACTUAL ALLEGATIONS

13.    On March 3, 2023, Plaintiff Ubaldo Figueroa Rodríguez was wrongfully dismissed from employment by the Secretary of Education, Lcdo. Eliezer Ramos Pares, with a pretextual excuse.  Retaliation because on February 27, 2023, the plaintiff wrote to Mr. Edgardo Rodríguez (Director of Human Resources) to ask when he would be placed back in a school (workplace), since a little more than four (4) months had elapsed since his Administrative Hearing (October 19, 2022) in which no evidence had been found to prove wrongdoing in baseless allegations made against him. Defendant was supposed to place him back to work within 3 months.

14.    Mrs. Eliza Delgado began working as principal of the Ramón Vilá Mayo School in October 2018, who would come to take the place of the principal Ivette López Román, who was retiring. Ms. Delgado had worked with the plaintiff previously. He starts harassing the plaintiff and looking for ways to get him out of school. In November 2019 he held a meeting with the plaintiff indicating that he was not justifying his attendance in the TAL System, to which plaintiff had indicated that he had to give him an individual workshop because when that workshop was given to him not being able to see remotely plaintiff could not learn how it was done and that he had been asking for that workshop for years and had been denied. Another of the things he accuses plaintiff of is that he had not given him the plans of his course, to which plaintiff told him that according to the Department he had determined that a teacher who had excellent evaluation did not have to be supervised. That if he wanted, he could see his plans on plaintiff's computer, but that he wouldn't get a copy of them. The other accusation was that plaintiff had fallen asleep (it wasn't with students in the room). Plaintiff told him that because he was diabetic, the medication was causing him this problem that as soon as he consulted with his doctor, Dr. Rojas, he would let

him know if plaintiff could change the medication or try another one. The agreements are written in the minutes. Plaintiff would bring his information about the treatment. She, on the other hand, promised to give him the workshop to fill out the electronic DE14 that would be the justifications for his attendance.

15. On December 19, 2019, when plaintiff went to the school, Secretary Griselkle Figueroa ordered the teachers to leave the office to give the plaintiff a letter. Plaintiffs pick up the letter and read it outside the office. That letter was from Dr. Lydia Báez Báez in which she told plaintiff that he had to present himself to the Educational Region because he was in Cautelar Measure. It did not indicate a reason for that measure. That's how plaintiff came to the Educational Region. Those last 2 days until the end of the semester were spent sitting in lobby of Baez's office.

16. When plaintiff returned in January 2020 it was fruitless to know the reasons, plaintiff wrote to Dr. Báez what was the reason for being there, he did it in writing, and received her response from Mrs. Ana Marrero, who was assigned to be his immediate supervisor while he was in Precautionary Measure. The answer was that she didn't know what the reason was. Ms. Marrero guided plaintiff and told him that he could not go near the school. And that if he had to pick up his belongings it would have to be through someone he knew and would do me the favor of looking for them or a co-worker. To which plaintiff did not want to expose a person to the director going to ambush her, at that moment he had already identified that this lady was reckless.

17. Plaintiff went to the Teachers' Association so that the law firm Cancio, Nadal & Rivera could find out why he was there. The lawyer who attended plaintiff told him to "stay calm where I was because to the extent that the process was accelerated, it could also speed up the process of my dismissal if I was found guilty." Plaintiff couldn't believe what he was telling and resigned from the representation of the union so that a private lawyer could represent him. The

lawyer he hired only told him that Lcdo. Portalatín, director of the Legal Division, had told him that a co-worker had accused him of an action of a sexual nature.

18. When the pandemic hit, plaintiff was sent home by the Department due to the closures ordered by incumbent governor Wanda Vázquez.

19. In August 2020, plaintiff introduced himself to the Department and Mrs. Marrero and asked to which school he had been placed, as he indicated that he had not been assigned a school. He told plaintiff to go to Mr. Edgardo Rodríguez to tell him where he would be placed because all those who were in Precautionary Measure at that time had been sent to teach, and that the classes would be virtual.

20. When plaintiff went to talk to Mr. Rodriguez he told him that he didn't know that he had to consult with Dr. Baez, that she would give him a call later to tell him my destination. In the afternoon he called plaintiff to tell him that Mrs. Baez had decided that he was the only one who would stay on the Precautionary Measure.

21. When plaintiff saw that AMPR was not going to represent him, he went to the Federation of Teachers and they advised him that if he was the only one who had to go to the DE in person, they should give it to him in writing, because if the teachers were not showing up at the schools they had to give him the same treatment.

22. Plaintiff told Mr. Rodriguez so and he never gave him in writing that he would stay at home until further notice, that he should send him the electronic DE14 and he would authorize them for the plaintiff. Plaintiff explained that he didn't know how to do it. He told the plaintiff not to worry that he would justify it.

23. Plaintiff constantly went to the Department of Education to find out the status of his report and they wouldn't let him, using as excuse COVID. And although he left messages for Mrs. Marrero, they had no response.

24. During the Holy Week of 2021, plaintiff did not receive his salary, he tried like crazy to get paid, but spoke with Mrs. Omayra López, president of the AMPR, with Edwin Morales of the FMPR, with Braulio Rivera of the Office of the Ombudsman of Disabled explaining that since they had not wanted to teach him how to justify his assistance in the system, that was why I he had not been paid. Mrs. Lopez from AMPR told plaintiff that Mr. Rodriguez was going to contact him to tell me what they were going to do with my case. They failed to give reasonable accommodation to the plaintiff, specifically training and assistance with Attendance program.

25. Mr. Rodriguez told plaintiff that Mrs. Marrero was going to contact him to make the pertinent adjustment and that she was not going to get paid for the next fortnight, but she would get the money after a month. Mrs. Marrero called plaintiff the next day and started arguing with him because, according to her allegation, he had to report to the Department for a long time. To which plaintiff told her that if they wouldn't let him into the Department and that she was his immediate boss and she had to call him and she didn't.

26. Plaintiff appeared at the department where he was doing nothing. He had no duties to perform, since he was a teacher. Ms. Marrero retired, and Ms. Yadira Burgos took over as his immediate boss. Plaintiff was informed that Ms. Baez was no longer Superintendent and that she was now in another position. Plaintiff wrote a letter to Mrs. Maldonado who was going to fill the position vacated by Mrs. Baez. He was replaced by Mr. Jorge Santiago Ramos, and plaintiff wrote to him to meet with him and find out what the status of his case and why was he there.

27. A co-worker gave him a very important piece of information and that is that Mr. Pablo José Torres, who worked at the Vilá Mayo school and was a co-worker of mine, was the son-in-law of Dr. Báez and obviously because of the treatment that Mrs. Delgado gave to this person, Dr. Báez owed him that favor.

28. On November 2021, plaintiff found out what was happening to him regarding the indictment. Mrs. Delgado had submitted the report as an accusation and a janitor who had not been working at the school very long and with whom plaintiff had not had much contact had accused him of having caught him masturbating while watching a pornographic film of a man and a woman. That she had knocked on the door and as no one answered she proceeded to open the door and supposedly surprised the plaintiff.

29. This is impossible because the allegations he makes is that supposedly the plaintiff was sitting in a chair and the TV is 5 feet away, and plaintiff has very "low vision" because of his albinism status.

30. The Administrative Hearing was on October 19, 2022, where plaintiff suffered facial paralysis 5 days before the Hearing. At the Administrative Hearing, no case was found.

31. When plaintiff arrived at the Department again in April 2021, he met some wonderful teachers who were on Precautionary Measure and who, according to their accounts, the accusations, like his, were fabricated cases. When he saw that he was no longer in danger and that he was supposed to be sent to a school, he began to make arrangements so that this "mafia" of the department would be creating cases to paralyze, plaintiff wrote to the Secretary of Education of New York, Dr. Miguel A. Cardona, exposing what was happening in the Department of Education, he referred him to the Office of Civil Rights of the Department of Education and they in turn, referred him to the EEOC in Puerto Rico.

32. On December 12, 2022, together with Jerry Ferrao, plaintiff appeared on the radio program with Jesús Rodríguez García and exposed what is happening. Jesus called the secretary and Jerry ended up questioning Lcdo. Ramos the aforementioned Precautionary Measure.

33. The next day, Jerry and plaintiff had called for a demonstration in front of the Department of Education and there were other teachers who are in Precautionary Measure, called to also expose their cases.

34. On December 14 and 15 we appeared on the radio program of Lcda. Mayra López Mulero and we made public expressions with respect to our workplace situation.

35. On December 15, 2022, Jerry was told that he could not return to the Department of Education, which would continue to be paid, but he could not enter the premises of the Department of Education.

36. The Department began by locating teachers who were on Precautionary Measure, so plaintiff infer they noticed that they were organizing. In some of the cases, teachers were extorted by the AMPR to accept their guilt because the Department, according to them, wanted to dismiss them. And the teachers ended up signing to admit so they wouldn't be out of a job.

37. The Department continued to locate teachers, until plaintiff was the only one left in that area.

38. Plaintiff had a complaint with EEOC for discrimination because he was diabetic.

39. And plaintiff have one on Public System Appeals Commission for impeachment.

**What precedes this situation**

40. Plaintiff had been discriminated against long before this event, since 2004, when he started working at the Albert Einstein School. Hi class was Fine Arts, Theater. With a dynamic format analogous to those presented in Physical Education courses. The principals believe that the uproar that can occur in the classroom due to the dynamics is that plaintiff had no class control because he was blind as part of his albinism and Hermansky Pudlak I condition.

41. The principal of this school made my life miserable until they managed to get me out of school. I filed a complaint with the Educational Region and after 2 years they had to send me back to school. In the meantime I had been sent to the Ramos Antonini school on Borinquen Avenue, where the principal laughed at me for the way I read.

42. Plaintiff went back to Albert Einstein and they chased him again until they sent him to the Miguel Such school where his class was not necessary because it was a vocational school. There he was assigned to a room full of mushrooms which could have aggravated his health condition, because the patients of Hermansy Pudlak cannot be exposed to the fungus because it can lead to Pulmonary Emphysema. He filed a complaint with OSHA and during the first year they fined the school, but when he filed the complaint the second year, (in which the parents did not allow their children to take his course because it was not a graduation requirement and they were not going to risk their children's health), there was a drought in 2015 and according to OSHA they determined that there was no fungus.

43. Plaintiff was then sent to the Gabriela Mistral school, to get there was an odyssey, he had to walk 30 minutes under the sun to get to the school. The sun went down (plaintiff had skin cancer) and had to walk down Central Avenue, exposing himself to being hit by a car because the sidewalks are occupied by cars. He filed a complaint with the EEOC.

44. The Department has tried in many ways to override plaintiff and succeeded.

45. Plaintiff tried to sue all agencies and because of the PROMESA Act everything came to a standstill. The principal, Mrs. Delgado, was aware that plaintiff was suing the Department because they wrote to her asking about him. She showed plaintiff that writing. When she arrived at Vila Mayo she asked plaintiff how his lawsuit was going. He honestly answered what had happened.

46. According to the plaintiff, the principals have a power conferred on them by the Department, in which for any reason it is for discrimination, for not getting along with a teacher, for a teacher to point out mistakes made by the principals, for not subjecting themselves or not doing some work assigned to them by the principal that is not within the functions of the teachers. They look for any excuse to subject them to a Precautionary Measure.

47. Once in the Department, the teachers are imprisoned for years. Teachers don't dare stand up to the Department because they know they're going to continue to be punished. According to the plaintiff, in the Department, teachers in Cautelar are treated like rubble, they are treated worse than a prisoner. The teacher in Precautionary Measure does not have a presumption of innocence, on the contrary, he has to prove that he is not guilty.

48. Plaintiff believes his employer discriminated against him because of his gender (Title VII), and retaliated (Title VII) because of his protected activity, in violation of federal laws. Plaintiff asks for discriminatory/retaliatory conduct to cease, his reinstatement, compensatory damages, backpay and legal fees.

49. The Court will find that plaintiff has alleged sufficient facts regarding his claims, status as a qualified individual, and/or an adverse employment decision, among others. Under the notice pleading standards of the Federal Rules of Civil Procedures, this is sufficient at this preliminary stage. See Shaner v. Synthes, 204 F. 3d494, 500 (3d. Cir. 2000); Shumacker v. Souderton Area Sch. Dist., No. Civ. A. 99-1515, 2000 WL 72047, at *8 (E.D. Pa. Jan. 21, 2000).

50. The Plaintiff now comes before this Court to seek only what is deemed to be fair and just, thru reasonable compensation for damages as a result of his employer's willful deprivation of his meaningful employment.

V. CAUSES OF ACTIONS

**COUNT I: Gender Discrimination/Violation of Title VII of the Civil Right Act**

51. The foregoing paragraphs are realleged and incorporated by reference herein.

52. Defendants' conduct as alleged at length herein constitutes discrimination based on his *gender* in violation of Title VII. The stated reason for defendant's actions were not the true reasons, but instead were *pretext* to hide defendant's discriminatory *animus*.

53. Defendant's conduct constitutes a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq. Title VII prohibits employers from discriminating against an employee on the basis of his gender and *also prohibits retaliation* against an employee who asserts his rights under the law. Title VII also prohibits workplace disciplinary practices that may have a *disproportionate* impact on a protected group of people, including *females.* Defendant's conduct violates statutory prohibition of employment retaliation. 29 USCA §215 (a) (3).

54. Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The harassing action need not be inspired "by sexual desire" to be redressable under Title VII – the only requirement is that the action must be because of the victim's sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); accord *Pérez-Cordero*, 656 F.3d at 28; *O'Rourke v. City of Providence*, 235 F.3d 713, 729 (1st Cir. 2001). An employer's creation or toleration of a hostile work environment, if sufficiently severe or pervasive, can qualify as an adverse employment action. See, *Noviello v. City of Boston*, 398 F.3d 76, 88-90 (1st Cir. 2005); *Quiles-Quiles v. Henderson*, 439 F.3d 1, 9 (1st Cir. 2006) ("[t]he adverse employment action requirement may be satisfied by showing the creating of a hostile work environment or the intensification of a pre-existing hostile environment.").

55. Defendant discriminated against the plaintiff because of his gender. Plaintiff worked in an environment mostly controlled by women. Over 90% of his fellow employee

professors who were similarly situated, were females. All administrative staff were females. The only Supervisor was a female who selectively prosecuted male staff employee/professors who were, including plaintiff, disproportionally and selectively prosecuted with pretextual fabricated baseless allegations of misconduct. Despite having no prior recurring issues of performance.

56. Female employees were treated favorably, and Supervisor was lenient to them.

57. Defendants are jointly and severally liable.

**COUNT II: Violation of the Americans with Disabilities Act (42 U.S.C. §12101 et. seq.)**

58. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

59. The Americans with Disabilities Act, as amended, 42 U.S.C. §12101 et. seq., prohibits employers from discriminating against people with disabilities in employment, including failing to make reasonable accommodations to known limitations of otherwise qualified individuals with disabilities, unless the employer can demonstrate that the accommodation would impose an undue hardship. The Americans with Disabilities Act of 1990 makes it illegal to discriminate against qualified persons with disabilities.

60. Defendant discriminated against the plaintiff on the basis of a perceived or actual *disability* and failed to reasonably accommodate plaintiff's disability, as required by ADA. Choosing to take adverse employment action, and proffered reason is a *pretext* for discrimination.

61. Defendants are jointly and severally liable.

**COUNT III: Retaliatory Involuntary Work Suspension
in Violation of Title VII (42 U.S.C.S. §2000e-3(a) et. seq.)**

62. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

63. Plaintiff will prove a prima facie claim of retaliation under 42 U.S.C.S. §2000e-3(a) and demonstrate by the preponderance of evidence that: (1) he engaged in protected activity

13

as an employee, (2) he was subsequently subjected to adverse employment action, and (3) there was a causal connection between the protected activity and his involuntary works suspension. The plaintiff in the instant case openly opposed his employer's unlawful workplace practices.

64. In the present case, the employer failed to resolve plaintiff's internal complaints, and engaged in selective prosecution of the plaintiff. Defendant's subsequent "legitimate non-retaliatory" reason for subjecting plaintiff to unlawful adverse employment action, is a *pretext* for unlawful retaliation. See *EEOC v. Louisiana Office of Community Servs.*, 43 F.3d. 1438, 1443 (5th. Cir. 1995) and *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th. Cir. 1994).

65. Defendants are jointly and severally liable.

## COUNT IV: VIOLATION OF THE COMONWEALTH OF PUERTO RICO LAW

66. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

67. Puerto Rico's Act No. 115, approved on December 20, 1991, is Puerto Rico's Employment *Anti-retaliation* Act ("Ley de Represalias contra empleado por ofrecer testimonio y causa de Accion""). It prohibits employers from retaliating against an employee who reports employer's unlawful practices to a government agency's investigation. Plaintiff belonged to a protected class *after* submitting a written complaint alleging a hostile work environment and employer's unlawful workplace practices.

68. Puerto Rico's Act No. 100, approved on June 30, 1959, as amended, is Puerto Rico's Employment Anti-Discrimination Act ("Ley Contra el Discrimen en el Empleo"). It prohibits discrimination by employer based on an employee's *gender*. 29 L.P.R.A. §146. Specifically, it also prohibits employers from taking adverse action against an employee because of his sex, with regards to the terms and conditions of his employment, refusing to keep or reincorporate employee into his job, willful deprivation of employment and/or taking adverse

actions that negatively affect his employment status. It also creates a *presumption* against the employer. In the above referenced case, the plaintiff belonged to a *protected class* of employees, he was qualified for his job, was forced to work in a hostile environment and placed in an involuntary work suspension because of his employer's retaliatory animus. Act No. 169 (2014) amended Act No. 100 to extend its protection to employees that participate in internal company procedures. Plaintiff filed an internal complaint.

69. Defendants are jointly and severally liable.

70. Defendants engaged in plaintiff's *retaliatory* involuntary work suspension, *after* he had interna complaints against his female supervisor.

### COUNT V: EMOTIONAL DISTRESSS AND MENTAL ANGUISH

71. Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

72. As result of defendants unlawful and tortious conduct towards plaintiff, he suffered severe emotional distress and mental anguish resulting in painful emotions, such as grief, severe disappointment, indignation, wounded pride, shame, public humiliation, and despair. A mental and emotional injury separate and distinct from his employment discrimination claims.

73. Under 29 L.P.R.A. §194b(b) plaintiff is entitled to file this civil action to recover compensation as a result of his mental anguish and emotional distress inflicted by defendants.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court declares that Defendants' conduct was illegal and in violation of legal statutes herein identified, and that it grants Plaintiff the following remedies:

A. That this Honorable Court issues a Declaratory Judgment declaring that Defendant's actions and/or omissions violate applicable law.

B. That this Honorable Court award Plaintiff reinstatement, back pay, all loss benefits, front pay and other equitable relief.
C. That this Honorable Court enjoins Defendant from engaging in additional discrimination and retaliation against Plaintiff.
D. That this Honorable Court award compensatory and general damages in the amount of $1,000,000.00 against all Defendants sued in their individual and/or representative capacities, for the Plaintiff, or an amount to be determined according to proof during the trial, as a remedy, as provided by the law and statutes of the United States and the Commonwealth of Puerto Rico.
E. That this Honorable Court award Plaintiff his costs, expenses, and attorney's fees.
F. Pre-judgment interest; and
G. Any other relief this Court deems equitable, just and appropriate.

## VII. JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues triable to a jury.

In San Juan, Puerto Rico, on this 12th day of March of 2024.

Respectfully submitted,

/S/ Humberto Cobo-Estrella
Humberto Cobo-Estrella, Esq.
**USDC-PR230108**
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 529-7140
Email: hcobo@hcounsel.com

/S/ Winston Vidal-Gambaro
Winston Vidal-Gambaro
**USDC-PR 130401**
PO Box 193673
San Juan, Puerto Rico 00919-3673
Tel. (787) 751-286
Email: wvidal@prtc.net
wvidal.law@qmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/S/ Humberto Cobo-Estrella, Esq.
*Attorney for the Plaintiff*